UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNICORN BULK TRADERS LIMITED,
                Plaintiff,

-against-

FORTUNE MARITIME ENTERPRISES, INC.,
                Defendant.

**MEMORANDUM OPINION AND ORDER**

08 Civ. 9710 (PGG)

PAUL G. GARDEPHE, U.S.D.J.

       On December 3, 2008, Plaintiff Unicorn Bulk Traders Limited ("Unicorn Bulk") moved for reconsideration of the Court's November 14, 2008 Order dismissing the Complaint for lack of subject matter jurisdiction (hereafter, "November 14, 2008 Order"). On December 8, 2008, the Court denied Unicorn Bulk's motion for reconsideration, but granted leave to file an amended complaint and an accompanying memorandum of law addressing whether the contract at issue is a maritime contract. Unicorn Bulk filed the Amended Complaint and memorandum of law on December 19, 2008. For the reasons stated below, the Court finds that it lacks subject matter jurisdiction with respect to the Amended Complaint.

## DISCUSSION

### A.    Background

       Unicorn Bulk seeks an <u>ex parte</u> maritime attachment order relating to its claim that Defendant Fortune Maritime Enterprises, Inc. ("Fortune Maritime") breached an agreement to purchase the vessel "KUISEB" (hereafter, the "Vessel"). (Amended Complaint ¶¶ 4-11; Prayer for Relief ¶ C) Unicorn Bulk further alleges that documents relating to the negotiation of that agreement suggest that Fortune Maritime intended to

"continue to use the Vessel for overseas trade" after purchasing it, as does the purchase price, which amounts to more than twice the approximate scrap value of the Vessel. (Id. ¶¶ 7-9) Other than the phrase "continue to use," the Amended Complaint sheds no light on how the Vessel was being used prior to the anticipated purchase date.

Pursuant to the Memorandum of Agreement for the sale of the Vessel, the breach of contract claim is to be arbitrated in London. (Id. ¶ 16) Unicorn Bulk alleges that it commenced an arbitration proceeding on December 4, 2008. (Id.)

Unicorn Bulk alleges that this Court has jurisdiction under 28 U.S.C. § 1333 because the Amended Complaint asserts a maritime claim. (Id. ¶ 1) It further alleges that the Court has federal question jurisdiction under 28 U.S.C. § 1331. (Id.)

### B.      The November 14, 2008 Order

An ex parte maritime attachment order is available under Rule B of the Supplemental Rules for Admiralty or Maritime Claims only in cases where the complaint states a "valid prima facie admiralty claim against the defendant." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). In the November 14, 2008 Order, the Court noted that it has long been the rule in the Second Circuit that "[a] contract to purchase a vessel is outside admiralty jurisdiction. . . ." CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 n.4 (2d Cir. 1982). The Court further found that Unicorn Bulk had provided no basis for ignoring this well-established precedent, and rejected Unicorn Bulk's argument that departure was warranted because more recent Supreme Court and Second Circuit decisions – including Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14 (2004), and Williamson v. Recovery Ltd. P'ship, 542 F.3d 43 (2d Cir.2008) – have broadened the scope of the Court's admiralty jurisdiction. The Court observed that even after Williamson and Kirby, courts in this

district have reaffirmed that "contracts for the sale of a vessel are not maritime in nature." Vrita Marine Co. Ltd. v. Seagulf Trading LLC, 572 F. Supp. 2d 411, 411 (S.D.N.Y. 2008); see also Exmar Shipping, N.V. v. Polar Shipping, S.A., No. 06-cv-12991(HB), 2008 WL 3992290, at *3 (S.D.N.Y. Aug. 27, 2008) ("Contracts for the sale of ships are not cognizable in admiralty."). (See November 14, 2008 Order at 2-3.)

Unicorn Bulk cited one contrary district court decision in support of its request for a Rule B attachment order: Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. Ltd., No. 08-cv-5299(SLS), 2008 WL 4489790 (S.D.N.Y. Oct. 4, 2008). This Court declined to follow Kalafrana for several reasons. First, the Second Circuit has explicitly held that breach of a contract to sell a vessel does not give rise to maritime jurisdiction. Until the Second Circuit overrules that precedent, this Court is obliged to follow it. Second, the factual record before the Kalafrana court was different in several important ways from that presented here. In Kalafrana, the plaintiff had alleged that the vessel in question had been used (and, implicitly, would continue to be used) in maritime commerce. Here, there were no allegations concerning the past or anticipated use of the Vessel in the Complaint. Moreover, the contract at issue in Kalafrana included an agreement to repair the vessel, an activity that has traditionally fallen within the courts' admiralty jurisdiction. See, e.g., New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997) ("A claim arising out of a contract to repair a ship falls squarely within a federal court's admiralty jurisdiction . . . ."). Here, the contract deals solely with the sale of a vessel. (See November 14, 2008 Order at 3-4.)

The Court also found that it did not have federal question jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9

U.S.C. § 201 et seq., because Unicorn Bulk had not commenced arbitration and did not seek to compel arbitration, to obtain preliminary relief in aid or arbitration, or to enforce an arbitral award. (See November 14, 2008 Order at 4-5.)

### C. The Amended Complaint

#### 1. Jurisdiction Under 28 U.S.C. § 1333

In its memorandum of law accompanying the Amended Complaint, Unicorn Bulk renews its argument that the Court should extend Kalafrana to contracts that solely concern the sale of a vessel. (Pltf. Br. at 1-7) In support of this argument, Unicorn Bulk includes new allegations in the Amended Complaint that could support an inference that Fortune Maritime did not intend to scrap the Vessel and wanted it to be seaworthy. (Id. ¶¶ 7-9) However, the Court declines to reach a different result than in the November 14, 2008 Order.

Regardless of Unicorn Bulk's new allegations, there is a controlling Second Circuit decision – The Ada, 250 F. 194 (2d Cir. 1918) – holding that a contract to purchase a vessel at a fixed price is not justiciable in admiralty. Id. at 195-96. Moreover, this principle has been cited with approval in two more recent Second Circuit decisions. International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 n.5 (2d Cir. 1989) ("Judge Leisure correctly ruled that admiralty jurisdiction under 28 U.S.C. § 1333 does not exist in actions involving the breach of a contract for the sale of a vessel."); CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 n.4 (2d Cir. 1982) ("a contract to purchase a vessel is outside admiralty jurisdiction").[1]  This Court is

---

[1] The rule is the same in many other circuits. See, e.g., Herman Family Recovable Trust v. Teddy Bear, 254 F.3d 802, 804 (9th Cir. 2001) (acknowledging "venerable principle

bound to follow controlling Second Circuit precedent unless that precedent is overruled or reversed – even if, as here, the precedent has been criticized by scholars and certain courts in other Circuits.  See United States v. Emmenegger, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) (district court is "obliged to follow . . . [binding Circuit case law] until it is overruled by a higher court or until the  Supreme Court renders it untenable"); Bass v. Coughlin, 800 F. Supp. 1066, 1071 (N.D.N.Y. 1991) ( "When the Court of Appeals announces a principle of law for this circuit, it remains the law until the case is overruled or reversed.").

> The Court is not persuaded that the Supreme Court and Second Circuit have overruled The Ada sub silentio, at least with respect to The Ada's holding that a contract for the sale of a ship is not maritime in nature.  While recent decisions from those courts instruct judges to "'focus[ ] [their] inquiry on whether the principal objective of a contract is maritime commerce,'" Williamson v. Recovery Ltd. Partnership, 542 F.3d 43, 49 (2d Cir. 2008), quoting Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25, 125 S.Ct. 385, 385 (2004), they also explain that courts should not merely "look to whether a ship or other vessel was involved in the dispute," Kirby, 543 U.S. at 24, 125 S.Ct. at 393.

---

that a suit arising out of the sale of a vessel does not give rise to admiralty jurisdiction"); Magallanes Invest. Co. v. Circuit Sys., Inc., 994 F.2d 1214, 1217 (7th Cir. 1993) ("'contracts for the sale of a ship are not "maritime" and thus admiralty jurisdiction does not apply'" (quoting Chase Manhattan Financial Services, Inc. v. McMillan, 896 F.2d 452, 460 (10th Cir. 1990))); J.A.R., Inc. v. M/V Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992) ("'[A]dmiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell . . . a vessel.'"); Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 850 (11th Cir. 1988) ("the law in the Eleventh Circuit is firmly established that neither contracts for construction nor for sale of a vessel are maritime in nature").

5

District courts in this Circuit have reached different conclusions as to whether a contract for the sale of a vessel is a maritime contract under the above-cited law.  In Vrita Marine Co., the court found that the sale of a vessel does "not have as its 'primary objective' either a 'maritime service' or a 'maritime transaction [ ],'" and therefore is not a "maritime" contract.  Id., 572 F. Supp. 2d at 411-12 (quoting Kirby, 543 U.S. at 24, and Williamson, 542 F.3d at 49).  The Kalafrana court reached the opposite result on the ground that vessels are essential components of maritime commerce.  Id., 2008 WL 4489790, at *3.  This Court finds Vrita Marine Co. more persuasive, in part because of the long-established rule that contracts for the sale of vessels are not maritime contracts, and the Supreme Court and Second Circuit's guidance that in deciding whether a contract is maritime in nature, "'[p]recedent and usage are helpful insofar as they exclude . . . certain common types of contract.'"  Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 311 (2d Cir. 2005) (quoting Kossick v. United Fruit Co., 365 U.S. 731, 735 (2d Cir. 1961)).

The Court declines to follow Kalafrana for a second reason:  as noted above, the contract at issue there was a "mixed" contract, like the contracts at issue in Kirby and Folksamerica.  See Kalafrana, 2008 WL 4489790, at *4.  Thus, there was an argument in Kalafrana that even though one aspect of the contract was for the sale of a vessel, the contract also provided for repair of the vessel – a subject that has traditionally been viewed as within a federal court's admiralty jurisdiction.  The contract at issue here, on the other hand, is solely for the sale of a vessel.[2]

---

[2]  Unicorn Bulk's Amended Complaint moves this case closer to Kalafrana in one respect:  the Court can now infer, as in Kalafrana, that the purchaser intended to use the

6

For the reasons stated above, the Court concludes that it does not have admiralty jurisdiction here.

### 2. **Federal Question Jurisdiction**

In the November 14, 2008 Order, the Court also held that it lacked federal question jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq. (the "Convention"), because such jurisdiction exists only where a party seeks to compel arbitration, enforce an arbitral award, or obtain preliminary relief in aid of arbitration, and Unicorn Bulk did not seek any such relief.  See Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 n.5 (2d Cir. 1989 (jurisdiction under the Convention does not exist unless "the party invoking its provisions . . . seek[s] either to compel arbitration or to enforce an arbitral award"); Borden, Inc. v. Meiji Milk Prods. Co., Ltd., 919 F.2d 822, 826 (2d Cir. 1990) (extending jurisdiction under the Convention to include jurisdiction over a request for a preliminary injunction made in connection with a petition to compel arbitration under the Convention).  (See also November 14, 2008 Order at 4-5.)

In its memorandum of law accompanying the Amended Complaint, Unicorn Bulk renews its argument that the Court has jurisdiction under the Convention on the grounds that it has now commenced arbitration (Amended Complaint ¶ 16); that its request for a Rule B attachment is a request for preliminary relief in aid of arbitration; and that the Amended Complaint's prayer for relief includes a request that the Court "recognize and confirm any foreign judgment or arbitration award rendered on the claims

---

Vessel for a purpose that required it to be seaworthy.  However, this additional factual inference is not sufficient to overcome the Second Circuit precedent discussed above.

. . . herein." (Pltf. Br. at 4)  These allegations do not provide an adequate basis for the exercise of federal question jurisdiction.

First, contrary to Unicorn Bulk's assertion, it has not sought preliminary relief in aid of arbitration under the Convention.  The only preliminary relief it has sought is a Rule B attachment, which is distinct from preliminary relief available under the Convention.  See ContiChem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426, 428-30 (2d Cir. 2000) (distinguishing between entitlement to relief under Convention and entitlement to relief under Rule B).  To show an entitlement to preliminary relief under the Convention, Unicorn Bulk would need to meet the requirements of the provisions of the Federal Rules of Civil Procedure pertaining to preliminary relief – e.g., Rule 65, which governs the grant of preliminary injunctions, see Alvenus Shipping Co., Ltd. v. Delta Petroleum (U.S.A.) Ltd., 876 F. Supp. 482, 487 (S.D.N.Y. 1994) – but it has not even attempted to do so.[3]

Second, jurisdiction may not be premised solely on the fact that Unicorn Bulk includes in its Amended Complaint a prayer for the enforcement of any arbitration award ultimately obtained, regardless of whether it has commenced arbitration.  Unicorn Bulk cannot seek

---

[3]  While a request for an attachment under Rule 65 of the Federal Rules of Civil Procedure would arguably give rise to subject matter jurisdiction here, Unicorn Bulk could not in good faith make such a request until, inter alia, it obtained a judgment against Fortune Maritime.  In ContiChem, the Second Circuit expressly held that in the absence of such a judgment, a district court "ha[s] no equitable power to issue a preliminary injunction preventing any entity from disposing of . . . [the defendant's] assets pending arbitration of the dispute."  Id., 229 F.3d at 430.  The ContiChem court further held that a plaintiff may not obtain preliminary attachment in aid of a foreign arbitration of a maritime dispute (such as the London arbitration here) under the provisions of Rule B and Rule 64 of the Federal Rules of Civil Procedure – which makes state law remedies available in certain circumstances – because New York law does not provide for such preliminary relief.  Id., 229 F.3d at 431-33.

to enforce an award – or vacate or modify an award – until the arbitrators have actually rendered a final ruling.  See 9 U.S.C. § 207 (providing that a party may apply for an order confirming an arbitration award "[w]ithin three years after an arbitral award falling under the Convention is made" (emphasis added)); see also Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980) (under Federal Arbitration Act, 9 U.S.C. §§ 10-11, a party may not seek relief with respect to a decision by arbitrators until the decision is final); Nedragro B.V. v. Zao Konversbank, No. 02-Civ.-3946(HB), 2003 WL 151997, at *3 (S.D.N.Y. Jan. 1, 2003) (explaining that one of five grounds for refusing to confirm an award under the Convention is that the award "has not yet become binding on the parties").[4]

\*     \*     \*

Because the contract at issue here is not a maritime contract and there is no basis for exercising jurisdiction under the Convention, the Complaint must be dismissed for lack of subject matter jurisdiction.  See, e.g., Vrita Marine Co., 572 F. Supp. 2d at 412 ("Because plaintiff [who asserts a claim for breach of a contract for the sale of a vessel] does not assert a maritime claim, this Court has no subject matter jurisdiction and accordingly . . . the complaint [must be] dismissed."); Gerling Global Resinurance Corp. v. Sompo Japan Ins. Co., 348 F. Supp. 2d 102, 105 (S.D.N.Y. 2004)

---

[4] If and when Unicorn Bulk obtains an arbitration award and seeks to enforce it in a United States District Court, it will need to consider whether the Southern District of New York is the proper venue.  An action under the Convention "may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States."  9 U.S.C. § 207.  Because neither party appears to have any ties to the Southern District of New York, and the place of arbitration is London, it appears unlikely that venue would be proper in this District.

(dismissing complaint for lack of subject matter jurisdiction where party asserting jurisdiction under the Convention did not seek to compel arbitration, enforce an arbitration award, or obtain a preliminary injunction in aid of a pending arbitration); Brocsonic Co., Ltd. v. M/V "Mathilde Maersk", 120 F. Supp. 2d 372, 380 (S.D.N.Y. 2000) (dismissing complaint for lack of subject matter jurisdiction where plaintiff failed to establish that contract at issue provided basis for federal admiralty jurisdiction).

## CONCLUSION

For the foregoing reasons, this action is dismissed without prejudice and the Clerk of the Court is directed to close this case. The Court further directs that if Unicorn Bulk commences any new action in this District concerning the dispute at issue in the Amended Complaint, or the related arbitration, it shall designate the new action as related to this action.

Dated: New York, New York  
January 20, 2009

SO ORDERED.

_Paul A. Gardephe_  
Paul G. Gardephe  
United States District Judge